UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STACY WHITE-MASI,

           Plaintiff,

vs.

SUBURBAN MOBILITY
AUTHORITY FOR REGIONAL
TRANSPORTATION,

           Defendant.

Case No.
Hon.

_____/

Brian J. Farrar (P79404)
STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
bfarrar@sterlingattorneys.com

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Stacy White-Masi, by her attorneys Sterling Attorneys at Law, P.C., for her Complaint and Jury Demand submits the following:

### JURISDICTIONAL ALLEGATIONS

1.    This is an action for disability discrimination in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") and for interference and retaliation under the Family and Medical Leave Act (FMLA).

2. Plaintiff is an individual residing in Macomb, Michigan, within the Eastern District of Michigan.

3. Defendant Suburban Mobility Authority for Regional Transportation ("SMART") is a regional public transportation authority organized under the laws of the State of Michigan, with its administrative headquarters located in Detroit, Michigan, within the Eastern District of Michigan.

4. Defendant is an employer as defined by the FMLA and PWDCRA.

5. This Court has federal question jurisdiction under 28 USC 1331 because this action arises under the laws of the United States.

6. This Court has supplemental jurisdiction over plaintiff's state law claims under 28 USC 1367(a).

7. The events giving rise to this lawsuit occurred in this judicial district.

**GENERAL ALLEGATIONS**

8. Plaintiff is an honorably discharged U.S. Coast Guard veteran, and holds a master's degree in Orientation and Mobility from Western Michigan University.

9. On or about January 8, 2024, SMART hired plaintiff to work as a Certified Orientation and Mobility Specialist.

10. Her role was critical to SMART's compliance with the Americans with Disabilities Act, focusing on accessibility for blind and visually impaired individuals.

11. Plaintiff has a long-standing medical condition known as drop foot, necessitating an ankle-foot orthosis (AFO) brace since 2006.

12. Despite this medical condition, plaintiff required no accommodations to perform her job duties and maintained an active lifestyle.

13. SMART required plaintiff to undergo a pre-employment physical with Dr. Ray Breitenbach.

14. During her December 15, 2023 pre-employment physical, plaintiff was visibly wearing her AFO brace.

15. Dr. Breitenbach asked plaintiff if the brace affected her walking or driving and plaintiff truthfully answered in the negative.

16. Plaintiff answered all questions during the pre-employment physical truthfully and honestly.

17. Plaintiff passed her pre-employment physical and began working at SMART.

18. As part of her job duties, plaintiff would frequently travel across Macomb, Oakland, and Wayne counties to conduct functional travel assessments, teach travel skills, and provide intensive one-to-one training for individuals with diverse disabilities.

19.     Plaintiff performed her duties with an unblemished record.

20.     Throughout her tenure, SMART never once raised concerns regarding her performance, safety, or ability to perform the essential functions of her role.

21.     On or about June 16, 2024, plaintiff suffered an acute hip injury and was evaluated at Troy Beaumont (Corewell Health) Emergency Room that same day.

22.     Prior to that incident, plaintiff had never sustained a hip injury, nor had she received treatment for one.

23.     Plaintiff immediately notified her supervisor, Leslie Verstraete, of the incident, her temporary use of crutches, and her need to work remotely while awaiting diagnostic testing.

24.     Despite her condition, plaintiff remained dedicated to her duties and performed all her required job assignments.

25.     Plaintiff continued to provide transparent updates to management and HR about her medical condition and treatment.

26.     Plaintiff provided documentation to management and HR of an orthopedic consultation on June 19, 2024, and the scheduling of an MRI and arthrogram for June 27, 2024.

27.     Plaintiff further informed SMART that she had a diagnostic follow-up appointment scheduled for July 8, 2024.

28. By these actions, Plaintiff provided SMART with clear notice that she suffered from a serious medical condition that would imminently require a medical leave of absence after she completed her one-year anniversary of employment.

29. Despite plaintiff's transparency, management and HR became frustrated that plaintiff's condition and upcoming medical leave would impact her performance.

30. On June 24, 2024, plaintiff arranged for a private driver to transport her to a work event.

31. Rather than demonstrating support, HR Specialist Dashia Parrish reached out to inappropriately criticize plaintiff, stating that she "shouldn't be at the event on crutches."

32. This comment, made in the context of an event designed to celebrate disability-inclusive mobility, underscores the discriminatory animus prevalent within SMART's HR Department toward employees with physical disabilities.

33. On June 28, 2024, Supervisor Leslie Verstraete abruptly moved a remote weekly meeting to a mandatory, in-person meeting for July 1, 2024, under the false pretense of "IQ training."

34. On July 1, 2024, plaintiff arrived at the Oakland terminal on crutches. No training occurred.

35. Instead, plaintiff was ambushed by HR representatives Dwayne Walker and Brandon Jones.

36. During this meeting, Walker interrogated plaintiff regarding her 5-page pre-employment physical and falsely accused her of covering up a prior hip injury during her pre-employment physical.

37. While an unrelated MRI from 2006 regarding a peroneal nerve issue (the source of the drop foot) noted an incidental, asymptomatic labral finding, this was not a "hip injury," nor did it require treatment.

38. Plaintiff provided no false information; she accurately completed her pre-employment medical questionnaire to the best of her knowledge.

39. When Plaintiff attempted to explain that she had never sustained a hip injury and did not understand the incidental finding to be a reportable "injury," Walker cut her off, stating, "the decision has been made."

40. SMART summarily terminated plaintiff, issuing a letter claiming she was fired for "failing to disclose information about your health history during a pre-employment medical examination."

41. This stated reason is a demonstrable pretext for discrimination.

42. SMART utilized an incidental, decades-old medical data point to terminate an employee who had suddenly become "visibly" disabled (on crutches) and had alerted the company of a potential need for FMLA-protected medical leave once she became eligible.

43.     At no point did SMART engage in an interactive process, discuss reasonable accommodation, or offer information regarding medical leave options.

44.     SMART's swift action was a retaliatory measure designed to eliminate an employee before she could exercise her rights under the FMLA and the PWDCRA.

## COUNT I

## DISCRIMINATION/RETALIATION IN VIOLATION OF THE FMLA

45.     Plaintiff incorporates the preceding paragraphs by reference.

46.     Although plaintiff had not yet reached her one-year anniversary, she provided notice of a serious health condition requiring treatment.

47.     An employer cannot preemptively terminate an employee to interfere with that employee's anticipated FMLA rights.

48.     Defendant retaliated against plaintiff for her notice of a need for medical leave by terminating her employment just one week before her scheduled follow-up diagnostic appointment.

49.     As a direct and proximate result of defendant's wrongful and discriminatory treatment of plaintiff, plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional

distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life.

## COUNT II

### DISCRIMINATION/RETALIATION IN VIOLATION OF THE PWDCRA

50. Plaintiff incorporates the preceding paragraphs by reference.

51. Plaintiff was qualified for her position.

52. The Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") prohibited defendant from retaliating against plaintiff for disclosing a qualifying medical condition or refusing to grant a disabled employee a reasonable accommodation.

53. Plaintiff is a qualified individual with a disability.

54. Defendant took adverse employment action against plaintiff and terminated her because of her actual or perceived disability, and because she requested accommodations (temporary remote work/use of crutches).

55. Defendant failed to engage in the interactive process.

56. Defendant's justification for terminating plaintiff is pretextual.

57. Plaintiff engaged in protected activity by requesting reasonable accommodations and disclosing her need for medical treatment.

58.   Defendant's adverse action was causally linked to her protected activity, as evidenced by the proximity in time between her medical notice and her termination.

59.   Defendant's actions were willful within the meaning of PWDCRA.

60.   Defendant discriminated against plaintiff with respect to her terms, conditions, and privileges of employment.

61.   As a direct and proximate result of defendant's wrongful and discriminatory treatment of plaintiff, plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter judgment against defendant, in whatever amount plaintiff is found to be entitled, together with reinstatement, punitive damages, interest as an element of damages, statutory interest, and attorney fees and costs.

## JURY DEMAND

Plaintiff Stacy White-Masi, by her attorneys Sterling Attorneys at Law, P.C., demands a trial by jury.

9

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/Brian J. Farrar         
        Brian J. Farrar (P79404)
        Attorney for Plaintiff
        33 Bloomfield Hills Pkwy., Ste. 250
        Bloomfield Hills, MI 48304
        (248) 644-1500

Dated:  July 1, 2026